IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANTHONY T. LEE, et al.,                           )
                                                  )
            Plaintiffs,                           )
                                                  )
                                                  )
UNITED STATES OF AMERICA,                         )
                                                  )
            Plaintiff-Intervenor and              )
            Amicus Curiae,                        )
                                                  )
NATIONAL EDUCATION                                )
ASSOCIATION, INC.,                                )
                                                  )
            Plaintiff-Intervenor,                 )
                                                  )
                                                  )
      v.                                          )      CIVIL ACTION NO. 1: 70CV1060-WHA
                                                  )                        (wo)
DOTHAN CITY BOARD OF                              )
EDUCATION, et al.,                                )
                                                  )

**MEMORANDUM OPINION AND ORDER**
**I. Facts and Procedural History**

This case began as part of a state-wide class action known as *Lee v. Macon Co. Bd. of
Educ.*, 267 F. Supp. 458 (M.D. Ala. 1967), which alleged that the State had a mandatory,
segregated school system in violation of the Fourteenth Amendment.  The Dothan City Board of
Education ("the Board") was added as a defendant in the case and the court subsequently ordered
the Board to implement a desegregation plan.

On June 13, 2000, this Court approved a Consent Decree agreed to by the parties which
provided that the Board had achieved unitary status in the *Green v. School Board of New Kent
County*, 391 U.S. 430 (1968) areas of facilities, transportation, hiring and assignment of faculty,

and student assignment across schools.  The court retained jurisdiction in the areas of faculty

recruitment, student assignment within schools, special education,[1] discipline, and

extracurricular activities.

After the 2000 Consent Decree was entered, the parties participated in mediation sessions

conducted by Chief Magistrate Judge Charles Coody.  These negotiations resulted in agreement

by the parties as to the areas of facilities, transportation, and student assignment.  On August 24,

2001, this court approved a Consent Decree Modifying Existing Order as to these areas, which

included a student assignment plan.  Under the 2001 Order, all elementary schools were

configured as kindergarten through fifth grade and all middle schools were configured as sixth

through eighth grade.  One elementary school, Montana Street Elementary, and one middle

school, Carver Middle School, were designated as system-wide magnet schools.  As part of the

2001 Order, the court noted that the Southeastern Equity Center agreed to assist the Board in

establishing the magnet schools.  The court also ordered the establishment of a community

magnet school advisory committee to be involved in the procedure leading to the selection of the

magnet programs, which was done, and the committee adopted a theme for the magnet schools.

The magnet system as recommended by the committee was implemented by the Board.

During the 2006-2007 school year, the Board became concerned that the selection

process at Carver magnet school caused the Board to be in violation of the federal No Child Left

---

[1] The statewide issues involving special education were resolved by a consent decree, which was adopted and approved in this case.  According to the terms of the statewide decree, any claims in the area of special education are to be raised with the State defendants.  Therefore, claims concerning a local school system do not affect a declaration of unitary status, since the matter must be addressed with State defendants as part of the commitments made under the statewide decree.

Behind Act, Pub. L. No. 107-110, 115 Stat. 1425 (2002).  Therefore, a new committee was constituted which consisted of twenty-two racially diverse persons, and which was chaired by the same person who chaired the original magnet school committee.  The committee's recommendations of selection criteria were subsequently adopted by the Board, with the agreement of the private plaintiffs in this case and the United States.

Under the 2000 and 2001 Consent Decrees, the Board was required to file a comprehensive report with the court each year.  The Plaintiff parties had the opportunity to advise the school Board of any concerns they had about compliance with the terms of the Consent Decree.   In its Orders approving the Consent Decrees, the court noted the parties were in agreement that if the terms of the agreement were carried out in good faith, the school system should be ready for a declaration of unitary status and a complete return to local control within three years.

On May 1, 2007, the Dothan City Board of Education filed a Motion For Declaration of Unitary Status seeking a declaration of full unitary status and a dismissal of the case.  The court set the Motion for a fairness hearing and required the Board to give all plaintiff class members and parents and guardians of students enrolled in the school system appropriate notice of the motion, as well as procedures for making objections.  The Board published notice of the proposed termination of this litigation and the date of the fairness hearing in the local newspaper. The notice provided procedures for class members and interested persons to file objections or comments with the court regarding the proposed dismissal.  Forms for objections and comments were made available at the schools, and notices were sent home with each student enrolled in the school district.

3

The court received written comments from interested citizens which were reviewed prior to the fairness hearing.  On June 25, 2007, the court held a fairness hearing.  During the fairness hearing, the court heard evidence presented by the Board through its Superintendent, Dr. Sam Nichols, and heard from seven members of the community who had timely submitted written objections about the declaration of unitary status, and who asked to address the court.

One area of concern expressed by citizens both in writing and verbally at the fairness hearing was the changes which have recently been made in the selection criteria for Carver magnet school, including the composition and selection of the committee which recommended the selection criteria.  The Board presented evidence about changes to the selection criteria for the Carver magnet school, stating, among other things, that there was a preference zone surrounding the school from which applicants for admission there who met certain academic criteria would first be drawn.  Although there were concerns expressed by persons objecting to the process by which the criteria were selected, the court finds that the committee which recommended the criteria was not constituted in violation of the Consent Decree, and that the criteria, which were agreed to by all parties, are consistent with the Orders of this court.

Another concern raised was with the efforts to recruit qualified African-American certified teachers to the system.  The Board presented evidence that from 2002 to the present it has increased its percentage of African-American certified staff from 14% to 19%, and that of the 96 new hires during that period, 44, or roughly 46%, were African-American.

Objections were also made in writing and orally with regard to the selection of cheerleaders at one of the two high schools.  That was the only objection raised in the area of extra-curricular activities, which is an area of extensive involvement in the district.  The

superintendent assured the court during the fairness hearing that the selection process does now and will continue to provide equal access to all students regardless of race.  The superintendent testified that financial barriers to application for cheerleading have been removed and that racial diversity of judges of cheerleading try-outs will be enforced.

During the fairness hearing, the superintendent also presented a resolution to the court, which had been adopted unanimously by the Board, entitled the Resolution of Adoption of Nondiscrimination Policies, to demonstrate the Board's future commitment to the Constitution and laws that were the predicate for judicial intervention.

At the conclusion of the fairness hearing, the United States supported the Board's Motion.  While counsel for the private plaintiffs acknowledged that there was concern within the plaintiff class, he interposed no legal objection to the declaration of unitary status.

## II. <u>Legal Standard</u>

The purpose of a desegregation case is to convert a school system which violates the Constitution because it is a *de jure* segregated school system to a system which has schools which are not racially segregated.  *See Green v. Co. School Bd. of New Kent*, 391 U.S. 430, 442 (1968).  "[T]he court's end purpose must be to remedy the violation and, in addition, to restore state and local authorities to the control of a school system that is operating in compliance with the Constitution."  *Freeman v. Pitts*, 503 U.S. 467, 489 (1992).  If a school system is successful in this effort, it can be declared "unitary," and control returned to the local school board.  <u>Id.</u> at 486-87.

The three requirements for dismissal of the case, as set out in the Consent Decree, are that (1) the Board has fully complied with the court's decrees for a reasonable period of time, (2)

the vestiges of past discrimination have been eliminated to the extent practicable, and (3) the Board has demonstrated a good-faith commitment to the court's decrees and to the Constitution and laws that were the predicate for judicial intervention.  *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1955).  The good-faith component requires that a school district must show not only past good-faith compliance, but a good-faith commitment to the future operation of the school system, which can be shown through specific policies, decisions, and courses of action that extend into the future."  *Lee v. Phenix City Bd. of Educ.*, No. 3:70cv854-T, 2005 WL 2850392 *6 (M.D. Ala. Oct. 27, 2005) (*citing Dowell v. Bd. of Educ. of the Oklahoma City Public Schools*, 8 F.3d 1501, 1513 (10th Cir.1993)).

The burden of proving that the school system has achieved unitary status is placed on the Board.  *See Lee v. Etowah Co. Bd. of Educ.*, 963 F.2d 1416, 1424 (11th Cir. 1992).  In addition to its responsibilities under the United States Constitution, the Board was required to comply with the requirements of the Consent Decree which set forth the steps the Board had to take to achieve unitary status.

### III.  Discussion

The Board has sought unitary status in the areas remaining under the Consent Decree. The Board has outlined its compliance with the Consent Decree in the remaining areas through the annual reports it has filed.  At the hearing conducted on June 25, 2007, the Superintendent also presented evidence pertinent to those remaining areas.  Much of that testimony has been outlined above.  With respect to the three remaining areas as to which concerns were expressed, namely, student assignment, faculty and staff hiring, and extra curricular activities, the court was impressed at the fairness hearing with the evidence of the Board's demonstrated commitment to

this court's orders and the Constitution through its establishment of attendance zones and equal access to the magnet programs, through the steady increase in the percentage of African-American certified staff from 14% to 19%, and its providing of equal access to extra curricular activities.  The court also finds it noteworthy that all of the district's elementary schools have achieved adequate yearly progress for two years under the federal No Child Left Behind Act.

Accordingly, on the basis of the record evidence, witness testimony, and averments of counsel, the court finds that notice of the fairness hearing was appropriately given, and that the school district defendants have met the standards entitling the district to a declaration of unitary status in the areas of faculty recruitment, student assignment within schools, discipline, and extracurricular activities.   The Board has fully and satisfactorily complied with the orders of this court.  The vestiges of the prior *de jure* segregated school system have been eliminated to the extent practicable.  The court also finds that the Board has demonstrated a good faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in this school system in the first instance, through the Board's compliance with the court's orders over the years, through its good-faith implementation of its contractual obligations under the Consent Decree, through the Resolution of Adoption of Nondiscrimination Policies, and through its policies, decisions, and courses of action that extend into the future.

The plaintiff parties have succeeded in the task they began decades ago to seek the end of the *de jure* system of school desegregation in the Dothan City school system.  By this lawsuit, they sought to bring the district in compliance with the constitutional requirement of equal

protection under the law, and the court states today that they have succeeded.  *See NAACP, Jacksonville Branch v. Duval County Schools*, 273 F.3d 960, 976 (11th Cir. 2001).

"[L]ocal autonomy of school districts is a vital national tradition." *Dayton Bd. of Education v. Brinkman*, 433 U.S. 406, 410 (1977).  Where control lies, however, so too does responsibility.  *Freeman*, 503 U.S. at 490.  Although this court is confident that the Board will live up to its public commitment to continue the operation of its school system in compliance with the Constitution, now that control over the schools can be returned to the Board, the Board, of course, in the future, "can be held accountable to the citizenry, to the political process, and to the courts in the ordinary course." *Id.*

## IV.  Conclusion

Control over the Dothan City school system is properly returned to the Dothan City Board of Education.  Accordingly, it is hereby ORDERED as follows:

1.  The Board's Motion for Declaration of Unitary Status (Doc. #109) is hereby GRANTED.

2.  All outstanding orders and injunctions are hereby DISSOLVED.

3.  Court supervision of the Dothan City Board of Education and the Dothan City School System is ended.

A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 27th day of June, 2007.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE